*1114 OPINION.
Hm,:
The sole issue for decision in this case is whether or not petitioner is subject to tax under section 104 of the Revenue Act of 1932. Respondent has determined that it is so taxable. Petitioner had no net income for 1932 ordinarily taxable to a corporation, but *1115 sustained a net loss in tlie amount of $15,738.18, as adjusted by respondent under section 21 of tlie applicable statute. In determining tlie deficiency respondent included in petitioner’s income tbe amount of $114,182.50 representing dividends received in the taxable year, and thus computed net income of $98,444.32 under section 104 (c). If petitioner is not within the purview of that section, there is no tax due.
Section 104 (a) subjects any corporation to a tax equal to 50 per centum of its net income, in addition to the tax imposed by section 13, if it was formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. And subdivision (b) provides that the fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.
In the deficiency letter respondent held only that petitioner was “subject to taxation under the provisions of section 104 of the Revenue Act of 1932.” It was not indicated whether such holding was based upon the premise that petitioner corporation was “formed” for the prohibited purpose, or that it was “availed of” in the taxable year for such purpose, or both; nor did the deficiency letter hold that petitioner was a “mere holding or investment company” or that its gains and profits had been permitted to accumulate beyond the reasonable needs of the business. On brief respondent urges all of these grounds in support of his determination. We shall, therefore, consider seriatim the various factors stated.
The first, and of primary importance, is whether or not petitioner was formed for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. This question, we think, must be answered in the negative.
At the time of the formation of petitioner on December 12,1929, and until May 10,1932, R. B. Mellon was its sole shareholder. For some years prior to 1929, Mellon had been engaged in the banking business, and had acquired stocks in numerous banks in the general vicinity of Pittsburgh, Pennsylvania. Because of his other activities Mellon was unable to supervise personally the management and control of the banks in which he was interested, and he also wished to have available a group of banks in western Pennsylvania in the event branch banking should be legalized. Accordingly, on October 1,1929, Mellon engaged F. R. Denton to formulate plans for an organization to supervise and coordinate the activities of the banks in which he was already interested and to arrange for the acquisition of stock in *1116 other banks in the same area. Denton had had considerable banking experience, and had been a national bank examiner for about seven years. He was then Assistant Chief National Bank Examiner in the office of the Comptroller of the Currency. After making an investigation Denton recommended to Mellon the formation of a corporation to manage the banks in which Mellon owned, or contemplated purchasing, stock. This was a common practice at that time. Pursuant to that recommendation, the Mellbank Corporation, petitioner herein, was organized.
Of course, the fact that petitioner was organized primarily for the purpose of managing a group of banks is not conclusive evidence that there was not also another purpose of its formation, namely, to enable Mellon to escape surtax, and petitioner has the burden of proving that there was no purpose to prevent the imposition of such tax. R. L. Blaffer & Co., 37 B. T. A. 851, 856. However, Den-ton testified at considerable length and in detail concerning the situation which lead to the formation of the petitioner corporation. The actuating motives were ample to justify the organization of such a corporation, and they were business reasons, wholly unrelated to any purpose to prevent the imposition of the surtax upon Mellon, the corporation’s sole stockholder. The matter of taxation was never mentioned. We find nothing in the record to justify our disbelieving Denton’s testimony on this point, even if it can be said that he was an interested witness. His testimony is not inconsistent with but is corroborated by other evidence. We have no hesitation in concluding that petitioner was not formed for the prohibited purpose. Cf. C. H. Spitzner & Son, Inc., 37 B. T. A. 511, 518.
Was petitioner, during the taxable year, a mere holding or investment company, or were its gains and profits permitted to accumulate beyond the reasonable needs of its business? If so, such facts, or either of them, would constitute prima facie evidence of a purpose to escape the surtax. Obviously, petitioner was not a mere holding or investment company. It had no investments in, and was not holding any corporate stocks, other than stocks of its member banks, which was necessary to enable it to carry on its business of managing, supervising, and operating those banks. This appears, notwithstanding that Mellon owned large amounts of stocks in other corporations, as evidenced by the fact that in his individual returns for 1930 and 1931 he reported dividends in excess of $5,600,000 and $4,800,000, respectively.
Nor did petitioner accumulate its gains and profits beyond the reasonable needs of its business. On the contrary, it appears from the facts found that such accumulation was greatly inadequate to meet such needs. Petitioner’s purpose in carrying on such business was not to save its shareholders from surtax, as in Rands, Inc., 34 *1117 B. T. A. 1094, 1102, but to safeguard its investments in the stock of member banks with a view to increasing its gains and profits, some of which would be taxable to it upon receipt and all of which would be taxable upon distribution to its shareholders. We are clearly of the opinion that the evidence in this case does not raise any prima fade presumption of a purpose to escape surtax.
Was petitioner in foot availed of during the taxable year for the purpose of preventing the imposition of the surtax upon the shareholders through accumulation of its gains and profits? Its net accumulation of gains and profits for the taxable year was $98,444.32. Its failure to distribute this amount is the basis of respondent’s determination of the deficiency. At the end of the taxable year petitioner’s total earned surplus or total accumulation of gains and profits amounted to $364,673.73,
The fact that Mellon transferred certain bank stocks to petitioner corporation had the actual effect of relieving him of the surtax which would have been attributable to the accumulated dividends if they had been distributed. “The statute, however, does not operate merely because of such actual effect; it operates if such effect was the purpose.” R. L. Blaffer & Co., supra; Cecil B. deMille, 31 B. T. A. 1161, 1174; affd., 90 Fed. (2d) 12; C. H. Spitzner & Son, Inc., supra. And while it is reasonable to infer that the effect of a voluntary act is among the purposes of the actor, such presumption can not be indulged when the facts indicate otherwise.
What then are the facts in this case with respect to whether or not the gains and profits accumulated by petitioner in 1932 were beyond its reasonable business needs? At the close of the taxable year the bank depression was rapidly approaching a crisis. It resulted in the National Bank Holiday in the early part of March 1933. Numerous banks failed in the Pittsburgh area. In the preceding year, 1931, there had been a run on the Citizens National Bank of Washington, Pennsylvania, a member of the Mellbank group, and it was necessary for It. B. Mellon personally to deposit a million dollars in cash in that bank in order to meet the run on its deposits and prevent the closing of the bank. At the beginning of 1931 petitioner had only $17,687.23 in cash and little if any additional liquid assets. It was therefore unable to go to the aid of the Citizens National Bank. Again, on January 7, 1932, Mellon was required to contribute $200,000 in cash to the paid-in surplus of petitioner in order to enable petitioner to pay the balance due on its subscription to stock of one of its member banks being reorganized to prevent failure. During 1932 petitioner deposited $270,000 in the affiliated banks to enable them to meet demands for withdrawal of funds. In 1933 petitioner deposited in excess of $1,185,000 with affiliated banks to meet withdrawal of funds *1118 and thus prevent closing; and petitioner contributed more than $1,-439,000 to the capital of affiliated banks necessitated by their financial condition. These funds were borrowed from petitioner’s stockholders and increased its loans payable in 1933 to $3,174,200. In the same year petitioner’s paid-in surplus was reduced more than $4,000,-000 on account of depreciation in value of the stocks it owned in member banks. During 1933 petitioner received total dividends of only $40,017.92 on investments in excess of $6,000,000 in bank stocks, and its operating expenses exceeded its total gross income by the amount of $15,544.18.
The history of petitioner’s operations to the close of the taxable year 1932, its financial status at that time, together with the conditions in the banking business which might reasonably be anticipated for 1933, certainly rendered inadvisable the distribution of any portion of petitioner’s current earnings. The amount accumulated was wholly inadequate to meet its reasonable and legitimate business needs. If there had been any distribution, it would have immediately become necessary for petitioner to borrow a corresponding amount, or for its stockholders to contribute such amount to paid-in surplus, in order to protect its business and prevent large losses of both capital and income. We hold, therefore, that petitioner was not availed of in the taxable year for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed.
Reviewed by the Board.

Judgment will he entered for the petitioner.